James A. Hogle, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 7400.    Promulgated October 17, 1946.

G. A. Marr, Esq., for the petitioner.
E. C. Crouter, Esq., for the respondent.

OPINION.

MURDOCK, *Judge*: The only question presented for decision in this case is whether the Commissioner erred in including in taxable gifts the profits from trading on margin for the accounts of the two trusts. The Commissioner argues that, since the income from marginal trading in the accounts for the years 1934 through 1937 was held taxable to the petitioner, it follows that the similar income for the years 1936 through 1940 must first have belonged to the petitioner and have been given by him to the trusts. This contention is not supported by the authorities cited by the respondent or by the facts in this case. It does not follow as a matter of course that, because income of a trust is taxable to the grantor, the transfer in trust is incomplete as to that income for gift tax purposes and that a gift tax liability arises when, as the income is earned, it is allowed to remain in the trust. The two taxes are not that closely integrated. *Commissioner* v. *Prouty*, 115 Fed. (2d) 331; *Commissioner* v. *Beck's Estate*, 129 Fed. (2d) 243.

The opinion of the Circuit Court in *Hogle* v. *Commissioner*, 132 Fed. (2d) 66, does not hold that Hogle was ever actually the owner of any of the corpus or income of these trusts. The court pointed out that Hogle could not share in the corpus or income of the trusts in any way. It recognized that all of the income realized in the accounts was realized as the income of the trusts and not the income of Hogle. The court was discussing the taxability of "the income derived by the trust" and it held that the profits derived by the trusts through trading on margins were taxable to Hogle because the earning of that income involved the exercise of personal skill and judgment by Hogle which he could exercise or withhold as he chose and it was proper to tax those profits for income tax purposes to him as "in substance personal earnings of Hogle." It is apparent from the opinion as a whole, despite certain statements, that the court regarded the profits from marginal trading as belonging in law to the trusts and not as profits actually belonging to Hogle, despite the fact that they were taxable to him under section 22 (a). The court recognized that the profits in

question could be realized only by the trust and never by Hogle personally.

The profits of the trusts from trading on margins were partly due, of course, to the personal skill and judgment of Hogle, who advised the trusts in the use of their funds. However, the profits arose from the use of trust corpus, i. e., only after the funds or securities belonging to the trusts were invested or sold in accordance with the advice of Hogle. While Hogle could give or withhold his advice, nevertheless, once he had given his advice he could not control the profits which the trust thereafter realized on its investments. He could not give or withhold those profits. The profits as they arose were the profits of the trust, and Hogle had no control whatsoever over them. He could not capture them or gain any economic benefit from them for himself. The question here is not whether Hogle may have made a gift to the trusts of personal services which might be valued independently of the profits derived from the marginal trading. The question is only whether he made a "transfer * * * of property by gift" to the trusts, consisting of the profits on the marginal trading accounts. Sec. 1000 (a), I. R. C. Neither the corpus nor the profit in the accounts was the property of Hogle under the law of Utah. He never made a gift of the profits to the trusts. The parties themselves seem to realize this. They have stipulated that the items in dispute are "the net gains and profits realized from marginal trading in securities and from trading in grain futures *for the account of* two certain trusts." (Italics added.) This, in effect, is a stipulation that the gains and profits were the gains and profits of the trusts as they were realized. Furthermore, that stipulation appears to us to be in accordance with the facts. Consequently, those amounts could not be the subject of any transfer by gift from the petitioner to those trusts.

This case is different from *Lucas* v. *Earl*, 281 U. S. 111, in which the Supreme Court was dealing with salaries and attorneys' fees earned by Earl. Earl and his wife had agreed that his earnings should be considered as having been received and owned by him and his wife as joint tenants. The Court hesitated to say that the salary did not vest, as earned, in Earl, but held it taxable to him because he earned it, even if it never for a moment vested in him. Here the profits vested as realized in the trusts, not in Hogle, and he could not make a transfer of them by gift.

The Supreme Court said that the issue in *Helvering* v. *Clifford*, *supra*, was "whether the grantor after the trust had been established may still be treated, under this statutory scheme, as the owner of the corpus." The statutory scheme which it was considering was "the broad sweep" of section 22 (a). The holding was that the grantor continued to be the owner of the corpus for purposes of 22 (a). The

Court recognized "his disability to make a gift of the corpus to others during the term of the trust." It has been held in the present case that the profits in question were taxable to the grantor under 22 (a), but the *Clifford* case is not authority for the proposition that, by allowing the profits to remain the property of the trusts, the grantor thereby made a gift of those profits to the trusts. When we examine this transaction from the standpoint of gift taxes as opposed to income taxes, we find there is no statute such as 22 (a) which has a broad sweep and which requires us to look behind the legal situation to some other in order to impose a gift tax. Also, it must be remembered that this is not a revocable trust in which the grantor, seeing a potential gain which he could capture for himself by revoking, may be said to have made a gift when he fails to revoke. Nor is it a trust where the grantor has retained the power to determine directly or indirectly which of two or more beneficiaries may receive the income, and finally allowing it to go one way, might be said to have made a gift at that time.

We must hold in this case that legal title to the amounts in question was never in the petitioner and was never transferred by him to the trusts, either in the taxable years or in any other years. Those profits were impressed with a trust when they first came into existence and the trust did not merely attach after they had come into existence. It is our understanding that the deficiencies result entirely from the action of the Commissioner in including in taxable gifts the gains and profits from trading on margin discussed above, and that if these amounts are not taxable gifts there is no deficiency for any year and, consequently, there can be no addition for failure to file returns.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

BLACK, *J.*, dissenting: It seems clear enough that the gift tax is imposed in the year when the gift becomes complete. *Burnet* v. *Guggenheim*, 288 U. S. 280.

In the instant case the petitioner and his wife in 1922 created the Copley trust, which was irrevocable, for the benefit of their three children. The trust was to consist of a trading account, to be operated under the direction of petitioner. No property was transferred to the trust in 1922. No gift tax law was in effect in 1922, but if there had been one in effect at that time no gift tax could have been imposed upon petitioner and his wife upon the creation of these trading accounts because any gifts thus made, from the point of view of substance, were inchoate and imperfect. It was only in later years when petitioner actually operated these trading accounts and they ripened into actual fruit represented by large profits that the inchoate and

imperfect gifts made back in 1922 became complete. It seems to me that the court in *Hogle* v. *Commissioner*, 132 Fed. (2d) 66, correctly characterized the fruits which arose from the operation of these margin accounts in the following language:

* * * The income thus created and the profits thus realized were not merely income accruing from the corpus of the Trust or from capital gains realized from disposition of corpus, but were profits earned through trading on margins involving the exercise of personal skill and judgment of Hogle, and were in substance personal earnings of Hogle. The amount of trading on margins which Hogle was to carry on for the Trust was wholly in his discretion. He could trade little or much or not at all for the benefit of the Trust as he saw fit. Thus, he exercised practical control over what portion of income from his personal efforts in trading on margins should accrue to the Trust.

Hogle allocated to the Trust in each of the taxable years in question such portion of his personal efforts in trading on margins as he saw fit. In substance, he gave to the Trust in each of those years the profits derived from a designated portion of his individual efforts. It amounted in each of those years to a voluntary assignment of a portion of his personal earnings. * * *

It is true, of course, that the foregoing language of the court was used with reference to the imposition of the income tax under section 22 (a) and would not necessarily control the incidence of the gift tax. However, I think it correctly characterizes what was done for the purpose of the imposition of the gift tax as well as that of the income tax.

The majority opinion in the instant case lays much stress on the fact that, once the profits were earned from the operation of the margin accounts by petitioner, they belonged to the trusts and could not be recalled nor deflected in any manner by petitioner. That is undoubtedly true, but it is, in my opinion, no answer to the issue that the gifts of the earnings in these margin accounts were not complete until the respective years when such profits were earned.

The court in *Hogle* v. *Commissioner, supra,* took note of the fact that it was not until the years that earnings from the margin accounts were realized that they fell into corpus. On that point the court said:

On the other hand, after the earnings which arose from trading on margins passed to the trust they became part of the corpus of the trust and were no longer within Hogle's control. Once they fell into corpus, the rights of the beneficiaries thereto and to the income therefrom were irrevocable. * * *

In considering the issue which we have here for decision, it should be borne in mind that the Commissioner is making no contention that the earnings of the trust corpus, as such, such as interest and dividends, were the subject of gifts in any of the years which we have before us. All that the Commissioner seeks to tax as being the subjects of gifts in each of the taxable years are the earnings from these margin accounts, and in this, I think, he is correct for reasons I have already endeavored to explain.

What I have said with reference to the Copley trust, created in 1922, seems to be equally applicable to the Three trust, created in 1932, and there is no necessity for repetition.

For the reasons above stated, I respectfully dissent from the majority opinion.

LEECH, HILL, KERN, and OPPER, *JJ.*, agree with this dissent.