SAX ROHMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35558. Promulgated March 31, 1954.

*Watson Washburn, Esq.*, for the petitioner.
*Paul M. Stewart, Jr., Esq.*, for the respondent.

1102

## OPINION.

RICE, *Judge:* The primary issue for our consideration is whether petitioner made a taxable gift by the assignment to his wife of a one-half interest in his literary work, "Drums of Fu Manchu." Although we have already held in a previous opinion, *Sax Rohmer*, 14 T. C. 1467 (1950), that this assignment was an anticipatory assignment of income and therefore did not relieve petitioner of the income tax liability thereon, this does not preclude its being taxable under the gift tax statute. See *Higgins* v. *Commissioner*, 129 F. 2d 237 (C. A. 1, 1942), certiorari denied 317 U. S. 658 (1942); *Commissioner* v. *Beck's Estate*, 129 F. 2d 243 (C. A. 2, 1942); *Commissioner* v. *Prouty*, 115 F. 2d 331 (C. A. 1, 1940); and cf. *James H. Hogle*, 7 T. C. 986 (1946), affd. 165 F. 2d 352 (C. A. 10, 1947).

Petitioner contends that this assignment was made as consideration for various professional and other services rendered by his wife in the writing of this novel, and that a gift resulted only to the extent that the value of the interest transferred exceeded the value of such services. However, we are unable to find, on the basis of this record, that these services were, in fact, given as consideration for the assignment of an interest in the novel rather than being in the nature of gratuitous services a wife will render in the aid of her husband's professional and business pursuits, whenever she may be of help. It is true that petitioner had followed a practice of dividing his income equally with his wife, but the evidence does not convince us that this was pursuant to an agreement requiring her to furnish consideration. Consideration must be bargained for in order to support a contract and negative a gift; and "nothing can be treated as a consideration that is not intended as such by the parties." *Fire Insurance Association* v. *Wickham*, 141 U. S. 564, 579 (1891). See 1 Williston, Contracts, sec. 101; Restatement, Contracts, sec. 75. The written assignment which effected the transfer of a one-half interest in the petitioner's novel makes no mention of a contract requiring the performance of

services by his wife. Rather, the record discloses that it was executed on the advice of petitioner's attorney to split their income in the attempt to effectuate tax savings. Financial dealings between husband and wife are especially subject to the scrutiny of the taxing authorities. *P. B. Fouke*, 2 B. T. A. 219 (1925). The evidence does not convince us that there was a preexisting agreement which required such services as the consideration for a one-half share in petitioner's income. In the absence of proof that his wife's services were rendered as consideration for this assignment, the interest transferred to her by the assignment must be deemed a gift unreduced by the value of such services.

The next issue concerns the value of the one-half interest in petitioner's novel at the time he transferred it to his wife. He contends, that in computing its value at that date, there must be deducted the allocable share of the Canadian serial rights, the literary agent's 10 per cent commission, and the United States Government's 10 per cent withholding tax. We will examine each of these points individually.

Petitioner argues that, since he was a nonresident alien, the 5 per cent portion of the purchase price of the serial rights which was paid for their use in Canada is exempt from tax pursuant to section 501 (b) of the Revenue Act of 1932.[2] However, petitioner did not transfer to his wife any property situated in Canada, or elsewhere outside of the United States, under this assignment. The sum total of what she acquired consisted of a one-half interest in the remaining proceeds from the sale of the serial rights, which were still owing to petitioner at that time, plus a one-half interest in all remaining rights in the manuscript. Both the proceeds of the serial rights and the manuscript were property "situated within the United States" at the time of the assignment, and the transfer of an interest therein is properly subject to the gift tax.

It is petitioner's contention that the literary agent's 10 per cent commissions on the sale of the various rights must be deducted to arrive at the value of the gift made to his wife. Section 506 of the Revenue Act of 1932, incorporated into the Code as section 1002, provided that, in determining the value of property transferred by gift, "the value thereof at the date of the gift shall be considered the amount of the gift." This was further amplified by Regulations 79 (1936 ed.), article 19 (1), which provided that the value of the property would be "the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion

---

[2] SEC. 501. IMPOSITION OF TAX.

(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States. The tax shall not apply to a transfer made on or before the date of the enactment of this Act.

to buy or to sell." Insofar as the serial rights are concerned, petitioner's wife received a one-half interest in the remaining proceeds of their sale to an American publisher. At the time of the assignment, these proceeds consisted of 3 postdated checks aggregating $23,750. They were made payable to the order of petitioner's American literary agent, and were in his possession.

Although the contract between petitioner and his literary agent is not in evidence, it is apparent from the record that the agent's commissions were a charge upon the proceeds of all sales arranged by him. In the absence of any specific instructions in the assignment directing that the interest transferred to petitioner's wife was to be free of this burden, it must be presumed that she took her interest subject to this charge; accordingly, one-half of this charge must be deducted in determining the value of the interest transferred to her. *Estate of Frank Miller Gould*, 14 T. C. 414 (1950), and other cases cited by respondent are distinguishable on their facts.

However, the literary agent's commissions on the motion picture and book rights stand on a different footing. The parties have agreed that the value of these rights at the date of the assignment is measurable by the prices at which they were subsequently sold. We have adopted these selling prices as their value at the date of the assignment, since it does not appear that there was any change in their value during the period between assignment and sale; and we do not believe that the agent's commissions are deductible in this situation. The gift tax is a transfer tax which reaches the entire value of the interest transferred at the time of the transfer. It is immaterial that these rights had no utility or value to the donee other than the net amount of money she might realize upon their sale. The tax is imposed upon the amount which "a willing buyer" would have paid the transferor for them, and we have found that this amount is the same as that for which they were subsequently sold. Furthermore, the donee's business expenses incurred in the subsequent sale of these rights cannot detract from their value at the date of acquisition, since it is possible that she might have arranged their sale without the services and expense of an agent. Simply because petitioner and his wife chose to employ the services of an agent in procuring the subsequent sale of these rights does not require the deduction of one-half the expenses of such sale from the value of the interest at the time it was transferred to petitioner's wife.

We come now to the last item which petitioner contends should be deducted in arriving at the value of the interest transferred, namely, the 10 per cent withholding tax which was deducted by petitioner's literary agent before remitting the proceeds from the sale of the serial rights. This Court has previously decided that petitioner was taxable

on the entire income from this literary work from sources within the United States despite the assignment of a one-half interest therein to his wife. It is he, and not she, who must bear this tax. The assignment makes no mention of his wife's interest being charged with the payment of one-half of petitioner's income taxes on this literary work; and we must assume that it was not. Therefore, petitioner's withholding payments on the total proceeds cannot be used to lower the value of the gift on the date made.

Petitioner has raised a procedural objection to the deficiency and penalty determined by the respondent, namely, that they are barred by the running of the 3-year statute of limitation. Petitioner's attorney filed a gift tax return in May 1939, as petitioner's agent, and in accordance with a power of attorney submitted to the respondent. In February 1940, the respondent wrote to the petitioner, calling his attention to the requirement that a gift tax return filed by an agent must be ratified by the donor within a reasonable time.[3] The letter further stated that "Until this return is ratified by you it cannot be considered as the return required by the statute for the calendar year 1938." Petitioner's attorney answered this letter the following month; and, after referring to the power of attorney previously submitted, stated that if "a further ratification is required, please let me know, and I will obtain the same from Mr. Rohmer and forward it to you." Respondent made no answer to this letter. In August 1946, a 30-day letter was sent to petitioner. Respondent's position is that petitioner's return, signed by an agent and not ratified within a reasonable time, was not sufficient to invoke the running of the statutory period of limitation. Petitioner argues that respondent's failure to answer his attorney's letter constitutes a waiver of the statutory requirement that the return be filed under oath. In the alternative, he argues that it constitutes a waiver of the regulation which prescribes that an unratified return shall not be considered the return required by the statute.

Although it appears that petitioner and his attorney acted in good faith in this matter, respondent's failure to reply cannot be con-

---

[3] Revenue Act of 1932. Title III, Gift Tax.

SEC. 507. RETURNS.

(a) REQUIREMENT.—Any individual who within the calendar year 1932 or any calendar year thereafter makes any transfers by gift (except those which under section 504 are not to be included in the total amount of gifts for such year) shall make a return under oath in duplicate. * * *

Regulations 79 (1936 ed.) ART. 20. Persons required to file return. * * *

If by reason of illness, absence, or nonresidence, a return is made by an agent, such return must be ratified within a reasonable time by the donor or other person liable for its filing; otherwise the return filed by the agent will not be considered the return required by the statute. Supplemental data may be submitted at the time of ratification. The ratification must be in the form of an affidavit, filed with the Commissioner, and must specifically state that the return made by the agent has been carefully examined and that the affiant ratifies such return as his own.

sidered a waiver of the statute. The taxpayer must comply meticulously with all named conditions in order to secure the benefits of the limitation. *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245 (1930). Section 507 expressly required that a return be filed by the donor "under oath." Petitioner was permitted to furnish such oath either on the return originally filed or by means of ratification, and he did neither. "There is no provision of law authorizing the Commissioner to waive either the oath or the signatures required by the statute." *Pilliod Lumber Co.*, 7 B. T. A. 591 (1927), affd. *Lucas* v. *Pilliod Lumber Co.*, *supra.* Therefore, however desirable it may be that the Commissioner answer all letters addressed to him, his failure to do so could not waive the statutory requirement that petitioner's return be filed under oath. Petitioner's unsworn return was not sufficient to start the period of limitation running.

The petitioner cites *United States* v. *Kales*, 314 U. S. 186 (1941); *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 293 (1945), rehearing denied 325 U. S. 895 (1945); and *Appel* v. *United States*, 100 F. Supp. 140 (E. D., Mo., 1951), in support of his argument that respondent had waived the requirement of the statute. However, in each of these cases, the respondent had taken some affirmative action which the taxpayer could justifiably deem a waiver. In the instant case, the conduct which petitioner relies on as constituting waiver was simply respondent's failure to amplify his previous explicit statement of the requirements of the statute and regulations.

The respondent called petitioner's attention to the requirement of ratification, and clearly stated that until this was done, the return filed by petitioner's agent could not "be considered as the return required by the statute." The power of attorney which had been submitted simply enabled petitioner's attorney to act as petitioner's agent with the respondent. Respondent's letter can only be construed as a request that petitioner confirm the accuracy of the return filed for him by his agent. Respondent was under no duty to restate to petitioner's attorney that, until such confirmation was timely received, the return filed by petitioner's attorney could not be considered as the petitioner's return.

Moreover, these cited cases all involve claims for refund where the question was whether the information filed by the taxpayer, though defective in form, was sufficient to apprise the respondent of the full extent of the taxpayer's claim. The Court in each case was concerned lest petitioner may have been prejudiced by the acts of respondent and induced thereby to forego the filing of timely corrections to thus imperfectly filed claims. But we are not concerned here with the optional filing of a claim for refund. The mandatory requirement that

a gift tax return filed by one's agent be ratified has not been complied with, and we can find no waiver of this requirement by reason of respondent's failure to restate his position when the petitioner had already been clearly informed with respect to it.

Petitioner also contends that the ratification which he submitted in November 1950 is valid, and relates back to the return filed by his agent in 1939. Regulations 79 (1936 ed.), article 20, prescribes that a ratification be filed within a reasonable time. Under the facts of this case such ratification, filed 11 years after the return it was meant to confirm, cannot be considered as having been filed within a reasonable time; and the doctrine of "relation back" cannot be availed of.

The last issue remaining for our consideration is whether petitioner is liable for a 25 per cent penalty under 3612 (d) (1) of the Internal Revenue Code [4] for failure to file a gift tax return as prescribed by the statute. Petitioner argues that reliance on his American attorney constitutes reasonable cause for failure to file the required ratification and thus to perfect his return. *C. R. Lindback Foundation*, 4 T. C. 652 (1945), affd. 150 F. 2d 986 (C. A. 3, 1945). This is a question of fact to be decided according to the particular circumstances of each case. The petitioner was a nonresident alien, and the record discloses that he relied completely upon his American attorney for advice in regard to taxes which might be due this country. When he received respondent's letter requesting ratification of the return previously filed for him by his attorney, petitioner promptly forwarded this letter to his attorney. We think that the reliance of a nonresident alien, then residing in England, upon his American attorney for counsel upon United States taxes is reasonable cause for failure to submit the required ratification. Respondent argues that it was incumbent upon petitioner to ascertain what action his American attorney had taken on the matter. However, petitioner had previously given to his American counsel a power of attorney empowering him to act for petitioner in all tax matters. Although petitioner was mistaken in this particular instance, he presumably believed that this enabled the expeditious handling of all tax matters including the rati-

---

[4] SEC. 3612. RETURNS EXECUTED BY COMMISSIONER OR COLLECTOR.

(d) ADDITIONS TO TAX.—

(1) FAILURE TO FILE RETURN.—In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax : *Provided,* That in the case of a failure to make and file a return required by law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after August 30, 1935, than there shall be added to the tax, in lieu of such 25 per centum : 5 per centum if the failure is for not more than 30 days, with an additional 5 per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate.

fication here in issue.    Petitioner's conduct in this matter was reasonable and prompt; and must be held to constitute reasonable cause for failure to file a gift tax return as required by law.

*Decision will be entered under Rule 50.*