CLYDE M. BOOHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38250. Filed June 28, 1957.

*Edgar J. Goodrich, Esq.,* and *Lipman Redman, Esq.,* for the petitioner.

*John C. Calhoun, Esq.,* and *Marion B. Morton, Esq.,* for the respondent.

PIERCE, *Judge:* The respondent determined the following deficiencies and additions to tax, in respect of income taxes of the petitioner:

| Year | Deficiency | Additions to tax | |
|------|------------|------------------|------------------|
| | | Sec. 293 (b) | Sec. 291 (a) |
| 1940 | $656.60 | $328.30 | $164.15 |
| 1941 | 6,362.45 | 3,365.61 | |
| 1942 | 17,959.49 | 8,979.75 | |
| 1943 | 22,079.62 | 11,039.81 | |
| 1944 | 45,351.51 | 22,675.76 | |

Also, by amendments to his answer herein, the respondent has claimed the following increased deficiency and increased addition to tax under section 293 (b) for the year 1943, and the following additions to tax under section 291 (a) for each of the years 1942 through 1944:

| Year | Deficiency | Additions to tax | |
|------|-----------|------------------|------------------|
| | | Sec. 293 (b) | Sec. 291 ((a) |
| 1942 | | | $4,724.42 |
| 1943 | $29,864.98 | $14,932.49 | 7,043.35 |
| 1944 | | | 14,157.18 |

The issues for decision are:

(1) Whether assessment of deficiencies for each of the years 1941 through 1944 is barred by the statute of limitations. The determination of this issue requires answers to the following questions:

(a) Were the returns for the years 1941 through 1944 false or fraudulent with intent to evade tax, within the meaning of section 276 (a) of the 1939 Code?

(b) Did the returns which petitioner's wife prepared, signed in petitioner's name, and filed on his behalf, for each of the years 1942 through 1944, constitute returns of the petitioner for purposes of said section 276 (a)?

(2) Whether the amounts of any of the above-mentioned deficiencies which are not barred by limitation, and the above-mentioned additions to tax under sections 291 (a) and 293 (b), should be approved.

FINDINGS OF FACT.

The petitioner, Clyde M. Booher, was a resident of Norton, Virginia. For the year 1940, he did not file an income tax return. For the year 1941, he filed a return with the then collector of internal revenue for the district of Maryland. And for each of the years 1942, 1943, and 1944, his wife prepared, signed, and filed a return in his name, with the then collector of internal revenue for the district of Virginia.

The petitioner was born in the year 1903. He had a very limited formal education, having completed only four grades of grammar school. In about 1930, after having worked for a time as a driver for a bus company, he organized his own bus service with two buses, as a sole proprietor under the name of Bristol-Norton Bus Line. This bus service operated over short routes in the vicinity of Bristol and Norton, Virginia; and it also made connections with other buslines and sold interline tickets. Petitioner attended to the equipment, did the

mechanical work, had charge of the bus schedules, and at times drove some of the buses. He had no knowledge of bookkeeping or accounting; and all accounting matters relating to his business for the years involved were handled by his wife, Gladys N. Booher. All books and records of the business were kept by the wife in the home; and there was no other business office.

Whenever petitioner's busline sold an interline ticket, for use on a route covered partly by it and partly by another company, it collected the full price of the ticket, including the portion thereof which was allocable to the other company. And conversely, whenever another company sold an interline ticket for use partly over the route of petitioner's line, such other company would collect the full price of the ticket. The accounting between companies was then handled in accordance with a system recommended by the Interstate Commerce Commission, which was called the "ticket lift" system. Under such system, all proceeds from sales of interline tickets were to be placed by the seller in a suspense account; and then at periodic intervals the amounts in such suspense accounts were to be apportioned among the respective companies. Also under such system, the amount due each company was not to be included in its income until the apportionment of the suspense accounts had been made, and the amount due each company had become determinable.

Shortly after the Bristol-Norton Bus Line was organized, petitioner's wife, who had no prior experience or formal education in bookkeeping or accounting, set up a simple set of books to record not only the income and expenses incident to the operation of petitioner's busline, but also the income from interline accounts. And then, in about 1941 or 1942, she set up, without the assistance of anyone, a more extensive set of 4 books, for the same purpose. All of these books embodied a single-entry system; and they were handled in this manner for all subsequent taxable years here involved. They may be described briefly, as follows:

(1) Drivers' Report Book.—This book contained summaries of the daily reports made by petitioner's bus drivers. It showed the amounts of gasoline which each driver used; the number of tickets (both local and interline) which he received; the amounts of cash which he received; the dates of the reports; and the driver's name. The drivers delivered such daily reports, together with the tickets collected and the amounts of cash received, to petitioner's wife; and she then made the entries thereof.

(2) Agents' Reports Book.—In this book there were recorded the proceeds from tickets sold by independent agents for use on petitioner's line. Such independent agents submitted daily, weekly, or bimonthly reports to petitioner's wife, of the tickets which they sold;

and they also delivered to her the amounts which they received for such tickets, less 10 per cent sales commission. The entries in this book were made currently by the wife, as the reports and ticket proceeds were received.

(3) Interline Accounts Book.—In this book there was kept a monthly record of the interline tickets which were picked up on petitioner's buses, and also a record of the amounts received on settlement of interline accounts.

(4) Expense Ledger.—In this book, a record was kept of the miscellaneous expenses incurred in the operation of petitioner's busline. The entries were made as the bills for such expenses were received.

There was no general ledger. All entries in the above-mentioned books were in the handwriting of petitioner's wife. Petitioner was not familiar with them, and he did not have any part in handling them.

In addition to keeping said books, petitioner's wife prepared all quarterly road tax reports to the State of Virginia; all quarterly Federal transportation tax reports; and all quarterly Federal social security tax returns. She signed petitioner's name to all of these; and she also prepared and signed his name to all bank checks issued for business purposes. She did this with petitioner's full knowledge and consent. Petitioner was not familiar with any of these instruments; and he did not prepare or handle any of them.

As before stated, no income tax return was filed by or on behalf of petitioner for the year 1940. As regards the return for 1941, petitioner's wife prepared it, and then had petitioner sign the same, before filing it with the collector. As regards the returns for the years 1942 through 1944, petitioner's wife not only prepared them, but she also signed his name to each of them, and filed them on his behalf with the collector. Each of these returns bore the caption "Clyde Booher— Trade Name—Bristol-Norton Bus Line"; it listed income and expenses for the business; contained a computation of the tax; and was signed "Clyde Booher." At the bottom of each of the returns for 1942 and 1943, the wife signed a statement that she was the person who had prepared the same.

No formal power of attorney was executed by petitioner to evidence the wife's authority to prepare or sign the returns for him; but he knew that she was handling them on his behalf. He did not assist in the preparation of the returns, or examine them before they were filed. He was not competent to handle them personally. He asked his wife to sign them; both he and his wife thought that she had the right to sign them; and he assumed that the returns were correct. He was willing for her to sign any instrument in connection with the business that she deemed necessary.

In the year 1945, petitioner and his wife separated; and after December 1945 she did not handle his accounts or prepare his returns.

Respondent's notice of deficiency to petitioner was mailed on October 5, 1951, which is more than 3 years after the filing of each of the returns here involved. Respondent determined the deficiencies set forth in said notice by use of the so-called net worth plus expenditures method, and also by use of the so-called bank deposits method. A comparison of the amounts of net income shown on the returns filed for the petitioner, with the amounts of net income determined by respondent in his notice of deficiency, is as follows:

| Year | Net income per return | Net income determined by respondent | Year | Net income per return | Net income determined by respondent |
|------|------|------|------|------|------|
| 1940 | (1) | $11,140.91 | 1943 | $5,245.72 | $44,978.28 |
| 1941 | $6,619.02 | 26,239.17 | 1944 | 27,059.98 | 86,073.21 |
| 1942 | 6,073.82 | 40,845.10 | | | |

1 No return.

In 1948, which was prior to the issuance of said notice of deficiency but after the respondent had begun his examination of the returns, counsel for petitioner engaged a firm of certified public accountants to examine petitioner's accounts for the years 1942 through 1944. These accountants were familiar with the ticket lift system, and also with the methods used by other buslines in handling their accounts. As the result of their examination, the accountants found that the records for said years had been very badly handled; that petitioner's wife had made numerous errors in recording the income and expenses; that she had incorrectly applied the ticket lift system recommended by the Interstate Commerce Commission; and that the taxable income for all of said years, 1942 through 1944, was understated. In some instances where an interline suspense account had been settled among the companies involved, the wife had charged to expense the amount paid to the other company, without including in income that portion of the account which belonged to the petitioner. In other instances, she had included in income only that portion of an interline suspense account which represented the excess of petitioner's share over the share due other companies—instead of including the full amount of petitioner's share. Also in still other instances, where the share of the other companies exceeded petitioner's share, she had included such excess in petitioner's income, even though it was more than petitioner's share. Furthermore, the accountants found that, in several instances, the wife had charged refunds on unused tickets to current expense, without including the original price of the tickets in income. And in many other situations, she had made mathematical

errors, and had failed to make entries for deductible expenses. So far as the accountants could determine, there were no unrecorded transactions, and the returns had been prepared in accordance with the books of account. The accountants submitted their conclusions and work papers to the respondent's agents.

At the trial, petitioner's counsel did not contest (except for the statute of limitations) the amounts of the deficiencies for 1940 and 1941, which the respondent had determined in his notice of deficiency. And, as regards the years 1942 through 1944, they presented no evidence in opposition to the determined deficiencies (other than that of limitation) ; but they did suggest, on the basis of the conclusions of their accountants, that the deficiencies should be recomputed so as to respread and reflect net incomes for said years, as follows:

| Year | Net income suggested by petitioner |
|---|---|
| 1942 | $24, 002. 63 |
| 1943 | 55, 583. 21 |
| 1944 | 83, 094. 26 |

The net income so suggested for the year 1943 is greater than the amount determined by respondent; but the net income so suggested for each of the years 1942 and 1944 is less than the amount determined by respondent.

Petitioner cooperated fully with respondent's agents in their investigation of his accounts; and he made no effort to withhold any information.

None of the returns filed by or on behalf of petitioner for the years 1941 through 1944 was false or fraudulent with intent to evade tax, within the meaning of section 276 (a) of the 1939 Code.

Each of the returns for the years 1942 through 1944, which petitioner's wife prepared, signed in his name, and filed on his behalf, constituted a valid return of the petitioner for purposes of said section 276 (a).

As regards the year 1940, the failure to file a return was not due to reasonable cause. As regards each of the other years involved, there was no failure to make and file a timely return as required by law.

No part of any deficiency for any of the years involved was due to fraud with intent to evade tax.

OPINION.

*I.*

The first issue for consideration is whether assessment of the above-mentioned deficiencies for the years 1941 through 1944, is barred by

limitation under the applicable provisions of the 1939 Code.[1] As to the year 1940, this issue is not presented, for petitioner concedes that no return was filed for that year.

Respondent's contentions as to this issue are: (1) That assessments for each of the years 1941 through 1944 are not barred by limitation, on the ground that the return for each of these years was false or fraudulent with intent to evade tax; and (2) that, as to each of the years 1942 through 1944, the assessments are not barred by limitation, on the further ground that the returns for said years which petitioner's wife prepared, signed in his name, and filed on his behalf, do not constitute returns of the petitioner. We do not agree with either of these contentions.

As to the first of said contentions, we are convinced, after seeing and hearing all the witnesses, including the petitioner, and after analyzing all the evidence, that none of the returns for the years 1941 through 1944 was false or fraudulent with intent to evade tax; and that the deficiencies for said years were due, rather, to inefficiency, incompetency, and negligence of petitioner's wife, in the handling of the business accounts. We believe that the bookkeeping system which the wife set up and maintained, without any accounting help, was inadequate to reflect the true income and deductions; that, through lack of adequate understanding, she misapplied the ticket lift system for interline accounts which was recommended by the Interstate Commerce Commission; and that, through a combination of lack of ability and negligence on her part, the net income of the business for all of said years was understated. But we are further convinced that, so far as the petitioner himself is concerned, he did not, either individually or by connivance with his wife or any other party, willfully attempt or intend to understate the income; and that he did not willfully make or attempt to make any false or fraudulent return with intent to evade tax. We are satisfied that petitioner was not competent, either to handle the accounts, or to prepare the returns; that he actually did not do so; and that he did not know or believe that the returns were incorrect. Negligence, careless indifference, or even disregard of rules and regulations, do not suffice to establish fraud. *Cleveland Thurston,* 28 T. C. 350; *E. S. Iley,* 19 T. C. 631, 635; *Walter M. Ferguson, Jr.,*

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276—

(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

SEC. 276. SAME—EXCEPTIONS.

(a) FALSE RETURN OR NO RETURN.—In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

14 T. C. 846, 849. We hold for the petitioner in respect to the first-mentioned contention of the respondent.

As regards respondent's second contention, that the returns filed on behalf of petitioner for the years 1942 through 1944 did not constitute returns of petitioner, we hold that the wife had authority from petitioner to prepare them, to sign his name to them, and to file them on his behalf, as his agent; and that each of said returns did constitute a return of the petitioner for purposes of section 276 (a). As we have heretofore stated, we are convinced that petitioner was not competent to prepare the returns himself. Petitioner's wife testified that petitioner asked her to sign his name to them on his behalf; that he also asked her to sign his name to various other returns, reports, and bank checks in connection with the business; that she believed she had full authority from petitioner to sign his name and file all of these; and that she actually exercised such authority throughout the taxable years involved. Likewise, the petitioner testified that his wife signed the returns on his behalf; that he always thought she had the right to sign his name both to the returns and to the other instruments which she did sign for him; that he told her whatever was necessary she should take care of; and that she acted as his agent in all such matters. We accept such testimony as credible; and there is no other conflicting evidence on the point. We hold that the wife did have authority to prepare the returns, to sign his name thereto, and to file them as his agent; and that, since she actually did have authority to so act for him, the employment of a formal written power of attorney to evidence such authority was not essential.

In the recent case of *Miller* v. *Commissioner*, 237 F. 2d 830, reversing in pertinent part T. C. Memo. 1955-112, the Court of Appeals for the Fifth Circuit considered a situation similar to that here involved. There, after exhaustively reviewing the provisions of the applicable statute, the regulations, and various decided cases, the court stated (pp. 836, 837) :

Fully recognizing, as we do, the necessity for regulations to make explicit many of the general provisions of the taxing statutes, the court nevertheless cannot give effect to regulations that modify or limit to the detriment of the taxpayer the express terms of the statute itself. Here the statute requires that "every individual * * * shall make a return which shall contain or be verified by a written declaration that it is made under the penalties of perjury * * *"

The Treasury's recognition, through the issuing of this regulation, that in certain circumstances chosen by it someone other than a taxpayer himself can sign his return and make it "the return required" by the statute, cannot have the effect of cutting down or limiting what may be a return as defined in the law itself. Such a regulation cannot be construed by the courts as making a return that does not comply with its terms "no return at all." The statutory grant of power to the Treasury to issue regulations does not touch upon the matter of the execution or making of the return, but covers only the extent and

detail in which the items of gross income and the deductions and credits and "such other information for the purpose of carrying out the provisions of this chapter" are to be stated.

Where, as here, a return complete in form, signed in the taxpayer's name by one purporting to have authority and who actually had such authority, was filed, we find no basis for holding that this was no such return as would commence the running of the statute of limitations. * * *

We agree with the foregoing statement.

We hold that assessment of the several deficiencies determined and claimed by the respondent for the years 1941 through 1944 is barred by the applicable statute of limitations.

## II.

Finally, it is necessary for us to consider the additions to tax determined and claimed by respondent under sections 291 (a) and 293 (b).

As regards those pertaining to the years 1941 through 1944, we hold that these should not be imposed. Additions to tax under both section 291 (a) and section 293 (b) are computed and imposed on the basis of specified percentages of the deficiency for each particular year involved; and, where the deficiency is barred by the applicable statute of limitations, any addition to the tax is likewise barred. (See section 275 (a) which relates to "income taxes imposed by this chapter [chapter 1]".) Moreover, we hold for the reasons which we have above expressed in relation to section 276 (a) of the Code, that no part of any deficiency for the years 1940 through 1944 is due to fraud with intent to evade tax, within the meaning of section 293 (b); and also that there was no failure to make or file a timely return for any of the years 1942 through 1944, within the meaning of section 291 (a).

As regards the year 1940, for which no return was filed, petitioner has conceded the correctness of the deficiency determined by the respondent; and we accordingly approve such determination. We hold, as above stated, that the addition to tax under section 293 (b) for said year, should not be imposed. We further hold that the addition to tax under section 291 (a) for said year, should, in the absence of any contest to the respondent's determination, be approved on the ground that the failure to file a return for said year was not due to reasonable cause within the meaning of section 291 (a).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: The majority Opinion holds that purported returns for the years 1942 through 1944 constituted proper

returns and started the statute of limitations on assessment and collection although each of those returns purported to be the separate return of the petitioner rather than a joint return and none of them was signed by the petitioner. Instead, the petitioner's wife signed his name on each return. This holding follows the reversal by the Fifth Circuit of a Memorandum Opinion of this Court in the case of *Morris Miller*, T. C. Memo. 1955–112, which was consistent with prior opinions of this Court and the regulations of the Commissioner to the effect that an individual return must be signed by the taxpayer if he is present and able to sign for himself. The importance of having the taxpayer approve and commit himself to the return is emphasized where, as here, the Commissioner charges fraud. *Ferrando* v. *United States*, 245 F. 2d 582; *Sax Rohmer*, 21 T. C. 1099, where the return was signed by an agent; *Roy Dixon*, 27 T. C. 338; and *Theodore R. Plunkett*, 41 B. T. A. 700, affd. 118 F. 2d 644, where, through inadvertence, the return was not signed at all. Cf. *Pilliod Lumber Co.*, 7 B. T. A. 591, affd. 281 U. S. 245; *Fourth & Railroad Realty Co.*, 25 T. C. 458; *Burford Oil Co.*, 4 T. C. 613, affd. 153 F. 2d 745. Some of the above cases are not directly in point but they serve to emphasize the importance of meeting the requirements of the statute and the regulations in regard to the execution of a proper return.

I also disagree on the fraud issues because this taxpayer was surely not so stupid as to believe that over a 5-year period he had taxable income of only $45,000 when, as a matter of fact, it amounted to $209,000, or over 4 times what he reported. He surely must have been aware that he had an additional $164,000 of income which he did not report.