Kathleen C. Vannaman, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Robert L. Vannaman, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 6366–66, 6380–66.  Filed May 18, 1970.

*Robert H. Dawson,* for the petitioner in docket No. 6366–66.
*Wm. Monroe Kerr,* for the petitioner in docket No. 6380–66.
*Harold L. Cook,* for the respondent.

OPINION

Since the returns were filed more than 3 years prior to the date of mailing the notice of deficiency, the deficiencies are barred under section 6501(a)[5] unless respondent can show that each of petitioners' joint returns was a "false or fraudulent return with the intent to evade tax" within the meaning of section 6501(c)(1).[6] And, of course, in

---

[5] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * *

[6] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(c) EXCEPTIONS.—

(1) FALSE RETURN.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

order to sustain the additions to tax under section 6653(b),[7] respondent must establish fraud.

Petitioners—who filed separate petitions, were represented by separate counsel, and filed separate briefs—did not testify on their own behalf or present any other witnesses at the trial. While not admitting that he received unreported income, Vannaman does not contest any of the specific adjustments to income made in the notice of deficiency and concedes that if fraud is established the deficiencies must stand. Kathleen likewise does not dispute the specifics of the deficiencies, but does contend that even if her husband's fraud is established the statute of limitations bars assessment of the deficiencies against her. For reasons discussed below we reject this argument. Consequently, there is no issue as to the deficiencies themselves, and the only issue presented is whether fraud has been established.

The burden of proving fraud is placed upon respondent by statute. Sec. 7454(a).[8] To satisfy this burden, respondent must establish fraud by clear and convincing evidence. *Drieborg* v. *Commissioner*, 225 F.2d 216, 218 (C.A. 6, 1955), reversing on another issue a Memorandum Opinion of this Court. In addition, fraud must be proven for each year for which respondent seeks to avoid the statute of limitations and sustain an addition to the tax for fraud. *W. A. Shaw*, 27 T.C. 561, 570 (1956), affd. 252 F.2d 681 (C.A. 6, 1958).

We shall first deal with the arguments raised only on Kathleen's behalf: (1) That her husband's conviction under section 7201 for willfully attempting to evade or defeat their income tax for 1960 does not estop her from denying fraud for that year; (2) that in the absence of proof that she committed fraud, the statute of limitations bars assessments of the deficiencies against her even if her husband's fraud is established; and (3) that in no event is she liable for the additions to the tax since she "has been neither accused, indicted nor convicted of fraud in any criminal proceeding, nor has there been any attempt by Respondent to bring before this tribunal any evidence of fraud on her part." As support for each of these arguments, Kathleen relies upon our opinion in *Henry M. Rodney*, 53 T.C. 287 (1969). We agree with her first argument, but reject the latter two.

In *Rodney*, as here, the husband had been convicted of willfully attempting to evade income tax. We held that the husband's conviction

---

[7] SEC. 6653. FAILURE TO PAY TAX.

(b) FRAUD.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).

[8] SEC. 7454. BURDEN OF PROOF IN FRAUD AND TRANSFEREE CASES.

(a) FRAUD.—In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate.

did not collaterally estop his wife, who had filed joint returns with him, from denying that any part of the underpayments of tax was due to fraud; then, on the merits of the case, we held that respondent had failed to prove fraud for any of the years involved. Also see *C.B.C. Super Markets, Inc.*, 54 T.C. 882 (1970). However, nothing in our opinions in *Rodney* and *C.B.C. Super Markets, Inc.*, suggests that fraud on the part of a wife who files joint returns must be proven to satisfy sections 6501(c)(1) and 6653(b). Neither of those sections limits its consequences to the actions of the particular taxpayer; section 6501(c)(1) speaks of "a false or fraudulent return" and section 6653(b) speaks of "any part of any underpayment * * * due to fraud." Thus, even if the joint-filing husband is the only one who committed fraud in filing the return and making any underpayment—and that may not be the case here, considering that a substantial part of the unreported income represents the value of improvements to both petitioners' residences—the bar of the statute of limitations still is removed from the deficiencies determined against the wife, and she is liable for the additions to the tax by virtue of the joint and several liability provisions of section 6013(d)(3).

We reiterate that all we held in *Rodney* was that an innocent wife is entitled to rebut respondent's assertion of her husband's fraud. Therefore, even though Vannaman is estopped from denying that he committed fraud as to 1960—recognizing this to be true, he has conceded the deficiency and addition to the tax for that year—Kathleen may do so. But if respondent affirmatively proves, by clear and convincing evidence, that Vannaman did commit fraud for each of the years in issue, that showing is sufficient to render Kathleen—as well as Vannaman—liable for the deficiencies and additions.

Turning now to the substantive issue of whether fraud has been established, we note that our Findings reflect that petitioners failed to report substantial amounts of taxable income for each of the years in issue. Although such substantial understatement of income is some evidence of fraud, *Schwarzkopf* v. *Commissioner*, 246 F. 2d 731, 734 (C.A. 3, 1957) (effective evidence), and *Kurnick* v. *Commissioner*, 232 F. 2d 678, 681 (C.A. 6, 1956) (highly persuasive evidence), both affirming Memorandum Opinions of this Court; *Tsunco Otsuki*, 53 T.C. 96, 107 (1969) (strong evidence), this fact alone may not be sufficient to establish fraud. *John Marinzulich*, 31 T.C. 487, 490 (1958); *Foster* v. *Commissioner*, 391 F. 2d 727, 733 fn. 10 (C.A. 4, 1968), modifying a Memorandum Opinion of this Court; *Merritt* v. *Commissioner*, 301 F. 2d 484, 487 (C.A. 5, 1962), affirming a Memorandum Opinion of this Court. However, repeated understatements of income in successive years, coupled with other circumstances—so-called badges of fraud—showing intent to conceal or misstate taxable income, present

a basis from which fraud may be inferred. *Id.; Furnish* v. *Commissioner*, 262 F. 2d 727, 728–729 (C.A. 9, 1958), remanding on another issue 29 T.C. 279 (1957); *Anderson* v. *Commissioner*, 250 F. 2d 242, 250 (C.A. 5, 1957), remanding on another issue a Memorandum Opinion of this Court, certiorari denied 356 U.S. 950 (1958); *Drieborg* v. *Commissioner, supra* at 219. While we do not agree with respondent's contention that the manner in which Vannaman used his position with Gulf for his personal gain—even if it can be characterized as defrauding his employer—is, by itself, probative of an intent to deprive the Treasury of its deserved revenues, we nevertheless find numerous indicia of an attempt to defraud the Government.

Petitioners contend that Vannaman's statements to the special agent—i.e., that he considered the items he received to be nontaxable "gifts" and that he thought the automobiles and property improvements would be taxable when they were sold—negate the existence of "bad faith, intentional wrongdoing, and a sinister motive," *L. Glenn Switzer*, 20 T.C. 759, 765 (1953), necessary for a determination of fraud. While it is true that a taxpayer's bona fide ignorance of the proper tax treatment to be accorded questioned transactions, or negligence in regard thereto, may be sufficient to preclude a finding of fraud, *Ench* v. *Commissioner*, 325 F. 2d 1017 (C.A. 3, 1964), affirming per curiam a Memorandum Opinion of this Court; *Clyde M. Booher*, 28 T.C. 817, 823 (1957); *Cleveland Thurston*, 28 T.C. 350, 355–356 (1957); *Walter M. Ferguson, Jr.*, 14 T.C. 846, 849 (1950), we are not convinced that such is the case here.

If Vannaman truly believed that the items he received were nontaxable gifts, then there is no explanation for his failure to reveal to the special agent the receipt of many of them. While petitioners would have us believe that this failure was due to Vannaman's lack of records and faulty memory, it is inconceivable that he merely forgot items as significant as a 1955 Buick automobile, substantial improvements to his residential properties, cash received in the amount of $2,000 a year, and use of R & R's credit card. This is especially so in light of his disclosure of two other automobiles, construction of his lake cabin, an icebox, and a washing machine. Furthermore, Vannaman attempted to persuade Gene Rumbaugh to lie about having purchased the 1955 Buick, which Vannaman allegedly "forgot." Finally, it appears that the only items Vannaman "remembered" were those that already had been discovered in a concurrent examination of the Rumbaughs.

Each year Vannaman listed items of income and deductions for his accountant's use in preparing petitioners' returns. However, none of the items of unreported income described in our Findings were included on any of these lists, even though the accountant asked him each year whether he had any other income. Vannaman never even questioned him about their taxability.

Vannaman's alleged belief that the cars and improvements were taxable when he sold them is inconsistent with his tax returns for the years in issue. In March 1956 petitioners moved from a residence for which substantial improvements had been paid for by Rumbaugh, Inc., yet none of their returns report the "income" attributable to such improvements. Similarly, none of petitioners' returns report the "income" from the sale of any of the three cars purchased for them in 1955 and 1957. But even more damning to petitioners is the fact that only 2 years prior to the interview at which Vannaman expressed this belief, he had been informed, and he agreed, that an automobile purchased for him by R & R in 1957 was taxable to him in that year. From this and all of the above we can only conclude that Vannaman's expressed justifications for not reporting the substantial amounts of income received from the Rumbaughs and their companies were calculated to intentionally mislead the special agent investigating his returns.

In summary, respondent has shown by clear and convincing evidence that each of petitioners' income tax returns for 1955 through 1960 was false and fraudulent and that at least a part of the underpayment in each year was due to such fraud. We are satisfied that the fraudulent intent existed at the time the returns were filed. Since Vannaman agreed to render assistance to the Gulf suppliers in return for the cash and property he received, he obviously knew such items were not gifts. And his failure to report any gain on the disposition of the house and automobiles negates any possible inference that he believed he had no taxable income until he sold them. That he continued to omit the income after the examination of his 1957 return in 1959, when he conceded the taxability of the value of a Mercury automobile, shows a deliberate intent to hide his true tax liability. His studied efforts to conceal his "ill-gotten" gains from the accountant who prepared his returns and the agents of the Internal Revenue Service, as well as his efforts to induce Gene Rumbaugh to lie on his behalf, confirm the existence of an intent to cheat which existed at the time each of the returns was filed. See *Elmer J. Benes*, 42 T.C. 358, 383 (1964), affd. 355 F.2d 929 (C.A. 6, 1966), certiorari denied 384 U.S. 961 (1966). Vannaman was present in the courtroom at the time of the trial, but he did not testify or introduce any rebuttal evidence. "The only permissible inference from such a mass of unexplained omissions and understatements is that they were deliberate and not inadvertent or the result of mistake." *Madeline V. Smith*, 32 T.C. 985, 987 (1959); *Max Cohen*, 9 T.C. 1156, 1164 (1947), affd. 176 F.2d 394 (C.A. 10, 1949). We hold that respondent has made the requisite showing to lift the bar of the statute of limitations and to sustain the imposition of the additions to the tax for fraud.

*Decisions will be entered under Rule 50.*