**ESTATE OF Elijah MUHAMMAD, Deceased, Emanuel Muhammad, Administrator, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Nos. 91–2560, 91–2561.**

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1992.

Decided June 19, 1992.

Rufus Cook (argued), Chicago, Ill., for petitioner-appellant.

Abraham N.M. Shashy, Jr., I.R.S.; Gary R. Allen, Charles Bricken (argued), Steven W. Parks, and Gayle P. Miller, Department of Justice, Tax Div., Appellate Section, Washington, D.C., for respondent-appellee.

Before CUMMINGS and POSNER, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This is a consolidated appeal of two cases, one relating to gift taxes and the other to estate taxes. Elijah Muhammad was the leader of the Nation of Islam until his death in February 1975. Approximately six months before his death he conveyed title to four houses near his own to various relatives who also held positions within the Nation of Islam organization. The Internal Revenue Service contends that these were gifts, on which gift tax should have been paid, and that they were made in contemplation of death, and were therefore part of the estate on which estate taxes are owed. Following a stay to allow probate matters to be decided in state court, the United States Tax Court heard the case, and determined that the transfers were gifts, upon which gift taxes were owed, and that they were made in contemplation of death, and therefore there was a deficiency in estate taxes as well. The Estate of Elijah Muhammad has appealed the correctness of these factual findings, and we affirm.

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the

## I. The gift tax

There is no dispute over the applicable law in this case. The Commissioner is presumed to have made a correct determination of deficiency, and the estate has the burden of proof on all issues. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Transfers to family members are presumed to be gifts. *Harwood v. Commissioner*, 82 T.C. 239, 258 (1984), *aff'd without published opinion*, 786 F.2d 1174 (9th Cir.1986), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986). To show that the transfers were not gifts, the estate must prove that full consideration had been paid for the houses in money or money's worth. 26 U.S.C. § 2512(b). The issue is not whether the decedent's intent was donative or not, but the objective fact of full compensation. Treas.Reg. § 25.2511–1(g)(1); *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). Therefore, we review this factual finding of the Tax Court as we would that of a district court sitting without a jury, under the clearly erroneous standard. 26 U.S.C. § 7482(a), *Duberstein*, 363 U.S. at 291, 80 S.Ct. at 1200. Thus, the first issue is whether the tax court's finding that the transfers were gifts was clearly erroneous.

The property in question consists of four houses on East 49th Street, Chicago, Illinois, each of which is worth $120,000. Elijah Muhammad purchased the property when it was still vacant lots, in 1964 or 1965. At that time the land was covered with trees and bushes which could provide cover for possible attacks on Elijah Muhammad. There was evidence about Elijah Muhammad's great concern for security throughout his life, and that these tracts of land were bought specifically to increase his safety. The land was cleared of foliage, and in 1969 Elijah Muhammad began constructing the four houses. As an additional security measure, Elijah Muhammad placed trusted assistants in the four houses. As the houses were completed they were occupied by the relatives to whom

Northern District of Illinois, is sitting by designation.

Elijah Muhammad later conveyed the properties.

On July 12, 1974, Elijah Muhammad made three conveyances. He transferred one house to his daughter, Ethel Sharrieff (head of the Nation's women's organization), and son-in-law, Raymond Sharrieff (Supreme Captain of the Fruit of Islam). Another house went to his son, Elijah Muhammad, Jr. (Assistant Supreme Captain of the Fruit of Islam) and daughter-in-law, Patricia Ann Muhammad. A third house was transferred to his son, Herbert Muhammad (business manager for Muhammad Ali) and daughter-in-law, Antonia Muhammad. On January 10, 1975 the final house was conveyed to his grandson, Sultan Muhammad (Muhammad's personal pilot, and also a member of the Fruit of Islam).

All of the family members, with the exception of Herbert Muhammad, contend that the houses were conveyed to them in payment for past services rendered and for future services that they promised to render. The men in the Fruit of Islam served as body guards and personal assistants to Elijah Muhammad. The three men to whom conveyances were made worked full-time at these positions. Herbert Muhammad argues that he paid for his house by making $300,000 available to Elijah Muhammad for the purchase of the land and the construction of the houses.

Two witnesses testified at trial, Herbert Muhammad and Raymond Sharrieff. They both testified that Elijah Muhammad told them and the other family members that he was transferring title of the houses in compensation for their years of service to him in the past, and for their promise of future services. There was also evidence that all male Muslims had a religious obligation to serve in the Fruit of Islam (FOI), which spread the faith and protected Elijah Muhammad. "Protection of Elijah Muhammad was in part supplied by the FOI members on a part-time basis as volunteers of the Nation; they were not paid—devotion, love, and loyalty are central to the Black Muslim religion." Brief of appellant at 10. "It would have been a deep and serious insult to any member of the FOI to offer him payment for his services protecting decedent." Tax Court's opinion at p. 4; testimony of Muhammad, Tr. 75–76.

To decide this question the court had to consider undisputed facts, and also weigh the credibility of Muhammad's son and son-in-law who were interested witnesses. The estate argues that the court was required to accept the testimony of the two witnesses because they were not contradicted or impeached. While there was no witness who explicitly contradicted the testimony about what Elijah Muhammad said about his motivation, there was evidence agreed to in the record which was inconsistent with such an exchange, including the following: 1) Muhammad was renowned for his generosity; 2) transfers to family members are presumed to be gifts; 3) all of the family members had served Muhammad for years without compensation, and had a religious duty to do so. They would have been insulted to have been offered payment for their services; 4) all Muslims were encouraged to contribute to the various Nation funds. Herbert Muhammad testified that he gave about $500,000 in addition to the $300,000 he claims paid for the house. There was no documentation of any of these amounts. Because he often donated to the church, there is no evidence, other than his own testimony, that some of the money was really intended as payment for the house, and not as a gift to Elijah Muhammad or the church. The transfer of money was not contemporaneous with the transfer of title, so there is even less connection between the two. The money cannot be treated as consideration for the transfer of property unless that was the intent of the parties. *Rohmer v. Commissioner*, 21 T.C. 1099, 1103 (1954).

This evidence is not all one-sided, but there is clear support in the record for the Tax Court's findings. They are not clearly erroneous.

## II. The estate tax

■ There is equally little dispute with respect to the applicable law on estate tax. At the time of Elijah Muhammad's death,

26 U.S.C. § 2035 provided that any transfer made within three years of death, that was not fully compensated in money or money's worth, was presumed to be made in contemplation of death. The facts discussed above showed that there had not been full compensation for the transfers made within three years of Elijah Muhammad's death. Therefore, the presumption applies and the estate has the burden of showing that the decedent had a life-affirming purpose for making the transfers. *Estate of Hutchinson v. Commissioner,* 765 F.2d 665, 670 (7th Cir.1985); *United States v. Wells,* 283 U.S. 102, 117, 51 S.Ct. 446, 451, 75 L.Ed. 867 (1931). Whether a transfer was made in contemplation of death is a question of fact, and we thus review the Tax Court's finding under the clearly erroneous standard. *Hutchinson,* 765 F.2d at 670.

■ The estate suggests two possible life-affirming purposes: to compensate for services and to increase security. Compensation for past services was found not to be the motive when the transfers were found to be gifts. However, even if this were found to be the purpose, it is not life-affirming, since people often leave testamentary gifts to people who have served them in life. Finally, there was no evidence or even argument to explain why it increased Elijah Muhammad's security to transfer title to his four relatives/security guards, when they were already living in the same homes rent free. If anything, transferring title meant that they could sell the houses and decrease security, whereas when Elijah Muhammad owned the houses, he could have evicted them if they stopped providing security for him. The findings of the Tax Court are not clearly erroneous; they are fully supported by the evidence.

AFFIRMED.