HOMER AND DOROTHY ADCOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Adcock v. Commissioner
Docket No. 1936-79.
United States Tax Court
T.C. Memo 1982-206; 1982 Tax Ct. Memo LEXIS 539; 43 T.C.M. (CCH) 1107; T.C.M. (RIA) 82206; April 19, 1982. William C. Brown and Walter R. Brown, for the petitioners. Genelle F. Schlichting, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: * Respondent determined a deficiency *540 of $ 7,506 and an addition to tax under section 6653(b) [1] of $ 3,753 on petitioners' Federal income tax for 1972. Because petitioners have conceded the underlying deficiency determined by respondent, the sole issue for our decision is whether petitioners' return for 1972 was fraudulent. Resolution of this issue will determine whether respondent's determination of the deficiency was within the statutory period. FINDINGS OF FACT Some of the facts in this case have been stipulated. The stipulation of facts, and the exhibits attached thereto, are incorporated herein by this reference. Petitioners Homer and Dorothy Adcock [2] timely filed their joint 1972 Federal income tax return on or before April 15, 1973. More than three years later, *541 on December 7, 1978, respondent sent to them by certified mail his statutory notice of deficiency. Mr. and Mrs. Adcock resided in Des Moines, Iowa, when they filed their petition herein. Petitioner Homer Adcock was active in two real estate businesses during the years in issue. He had passed the broker's examination in 1946 to become a real estate broker. That same year, he organized the company Capital City Realty. Later, in 1955, he formed the partnership Capital City Builders. In petitioner's work with these businesses, he dealt with both residential and commercial property. Petitioner also served as a member of the Iowa Liquor Control Commission (Commission) from July 1959 through 1971. He was its chairman, except for the period July 1967 through July 1969. The Commission purchased products from wineries and distilleries, which it then distributed to approximately 200 state-operated liquor stores for sale to the public. A company that wished to market its products in Iowa would submit a proposal to the Commission for review. If the Commission accepted the *542 proposal, it would order products from the company. While petitioner was a member of the Commission, he received certain monies from a company that wished to sell its products to the Commission. He failed to report these monies on his income tax returns. Subsequently, on October 22, 1976, he was convicted on three counts of willfully attempting to evade taxes under section 7201 for the years 1969 through 1971; on three counts of subscribing to a false return under section 7206(1); and on two counts of extortion under 18 U.S.C. sec. 1951 for the year 1971. This conviction was affirmed by the Eighth Circuit Court of Appeals in an unreported decision, No. 72,2056, filed June 14, 1977. Petitioner later agreed to pay assessments for tax deficiencies and additions to taxes under section 6653(b) for the years 1968 through 1971. Petitioner left the Commission in 1971, and thereafter was employed on a salary and commission basis as the Iowa representative for various wineries and distilleries. In 1972, his salary for this work was only $ 25,482, but he earned $ 152,182 in commissions. He fully reported his income on his 1972 Federal income tax return. *543 Petitioner's income tax return for 1972 was prepared by Maurice Stromwell. Mr. Stromwell was a certified public accountant who, for the past 25 years, had prepared petitioner's returns, including those for the years in which petitioner was found guilty of tax fraud. In computing petitioner's taxable income, Mr. Stromwell typically used every method that he could be determine the lowest amount of taxes which had to be paid. For instance, in 1968 he computed petitioner's taxable income under the alternative tax and the income averaging method before determining that the letter method would be more advantageous for petitioner. Beginning in 1969, Mr. Stromwell used a computer service, known as Sta-Fed, to perform automatically the computations which he had previously done matually. He continued to make it his goal to assure petitioner that he had done everything possible to reduce petitioner's tax liability. Petitioner was not ignorant of the income tax laws, even though he always employed Mr. Stromwell to prepare his returns. Prior to 1972, he had read various income tax articles, and had taped a newspaper clipping concerning income taxes to the wall of his office. He also *544 had in his office a book entitled "Your Income Taxes," which was published by U.S. News & World Report. To assist Mr. Stromwell in preparing his 1972 Federal income tax return, petitioner gave to him a worksheet, Forms W-2, and Forms 1099. On the worksheet he listed various expenses, such as hospitalization insurance, interest payments, and charitable contributions. Petitioner knew these expense items were deductible because he had been entitled to deduct them in previous years. Petitioner also gave Mr. Stromwell a card on which he listed various guarterly estimated tax payments that he paid in 1972. [3] His testimony as to these estimated tax payments was inconsistent. Initially, he claimed that he did not confer at all with Mr. Stromwell regarding the amount of his estimated tax payments because "I didn't understand what estimated taxes was." Shortly thereafter, he testified that Mr. Stromwell must have prepared them. Finally, he stated that he had guessed at the amount he had to pay for estimated taxes but immediately changed his answer to state that he had gotten the estimated tax figures from Mr. Stromwell. Petitioner was unable to explain why he had to furnish Mr. *545 Stromwell with information concerning the estimated tax payments if Mr. Stromwell had calculated those payments for him. Mr. Stromwell testified that he did not recall preparing an estomated tax for petitioner other than at the end of 1971, and that petitioner would have had no reason for conferring with him during the year about the estimated tax. Mr. Stromwell computed petitioner's 1972 income taxes using the Sta-Fed system. He inserted petitioner's base period taxable income figures for 1968 to 1971 on the computer imput form, as well as other data pertinent to petitioner's 1972 return. He obtained the base period taxable income figures from his files which contained petitioner's Federal income tax returns for the years 1968 to 1971. The computer-generated income averaging computation proved to be more advantageous to petitioner than any other method, so Mr. Stromwell prepared petitioner's return using income averaging. Because petitioner had fraudulently understated his income on his returns for 1968 to 1971, the base period taxable income figures which *546 Mr. Stromwell used on the input form were erroneous. Thus, the Sta-Fed income averaging calculation underestimated petitioner's taxes due in 1972. If the correct figures had been used, income averaging would not have benefitted petitioner. Petitioner testified that he did not know that income averaging had been used to prepare his 1972 income tax returns. Moreover, he claimed that he did not know what the word "averaging" meant. When asked to give an average of the numbers 10, 20, and 30, he maintained that he could not do so. Later, however, he testified that he had become aware of the meaning of the term "income averaging" in 1978. In a pretrial affidavit, Mr. Stromwell stated that he had explained to petitioner in 1972 that income averaging could sometimes give him a benefit over the alternative tax. At trial, he reaffirmed giving this explanation, but he was uncertain whether he had given it prior to 1972 and whether he had given it only once. He also testified, consistent with his affidavit, that he believed petitioner understood income averaging in a general way, common to the average taxpayer. Moreover, he stated that, in 1972, he had reassured petitioner that *547 he used every method available to ascertain petitioner's smallest tax liability. ULTIMATE FINDINGS OF FACT Petitioner knew that Mr. Stromwell used the income averaging method to prepare his 1972 Federal income tax return. Petitioner also knew that this method required the use of his fraudulent returns for previous years in order to arrive at the liability shown on his 1972 return. At least a part of the underpayment of tax for 1972 was due to fraud on the part of Homer Adcock. OPINION Section 6653(b) provides that if any part of an underpayment of tax is due to fraud, there should be added to the taxes owed an amount equal to 50 percent of the underpayment. Thus, for section 6653(b) to apply there must be (1) an underpayment of tax, (2) some part of which is due to fraud. Petitioner concedes that there was an underpayment of tax. However, he does not concede that any part of that underpayment was due to fraud. Respondent argues that petitioner's 1972 return was fraudulent because he used concededly fraudulent base period taxable income figures from the years 1968 to 1971 in computing his 1972 taxable income. Petitioner claims that the return was not fraudulent because *548 he was not aware that these figures from earlier years had been used to complete his 1972 return. Whether fraud exists is a question of fact that must be determined from the entire record. See, e.g., Stratton v. Commissioner,54 T.C. 255 (1970). Fraud has been described as intentional wrongdoing, and the intent required is evasion of taxes believed to be owing. Mitchell v. Commissioner,118 F.2d 308 (5th Cir. 1941). Respondent has the burden of proving that fraud existed by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Beaver v. Commissioner,55 T.C. 85 (1970). He may meet his burden of proof by circumstantial evidence and reasonable inferences properly drawn from the record; however, the existence of fraud may not be imputed or presumed. Stone v. Commissioner,56 T.C. 213 (1971); Otsuki v. Commissioner,53 T.C. 96 (1969). Petitioner claims that, in 1972, he did not know what income averaging meant, and that he did not know that his accountant, Mr. Stromwell, had used the income averaging method to prepare his 1972 Federal income tax *549 returns. He argues that since he did not supply Mr. Stromwell, in 1972, with the base period income figures used in the income averaging computation, and because he had no knowledge that Mr. Stromwell would use those figures, he could not have filed his 1972 return with a specific purpose to evade taxes. However, based upon the evidence before us, we conclude that petitioner's underpayment of taxes in 1972 was due to fraud. First, we are convinced that petitioner knew what income averaging was, in a general way. He was neither an ignorant nor an uneducated man. He had been a real estate broker since 1946, he had worked for 12 years in a position of public trust at the Iowa Liquor Control Commission, and he had earned substantial income as a sales representative for various wineries and distilleries. He read various articles on taxes, had a book pertaining to them in his office, and had a newspaper clipping about them taped to his wall. Moreover, Mr. Stromwell had told him about the income averaging provisions and believed that petitioner understood them in a general way, common to the average taxpayer. Petitioner's testimony that he did not understand the meaning of "averaging, *550 " either in 1972 or at the time of trial, lacks credibility. [4] Upon questioning by his own counsel, he indicated that he knew the meaning of "averaging," at least by the date of trial, because it had been brought to his attention by respondent's agent in 1978. We do not purport to find that petitioner knew the mechanics of income averaging, but we believe he understood that income averaging involved comparing past years' taxable income figures with those of the current year in order to reduce current income taxes. We are also convinced that petitioner knew that Mr. Stromwell routinely computed his yearly returns using the income averaging method, as well as the alternative tax, so as to determine the lowest possible tax petitioner owed. Mr. Stromwell had explained to petitioner that the income averaging computation could sometimes give him a benefit over the alternative tax. He had also assured petitioner that he always *551 used every available method to determine the lowest tax liability possible, and he kept records of the methods which he tried. Thus, when petitioner expressed concern about the large amount of taxes due on his 1972 income, Mr. Stromwell told him that he had used the method which had produced the lowest income tax. Finally, we disbelieve petitioner's testimony that he never looked at his tax returns and never knew which methods were used on his return. Petitioner was a businessman and had some knowledge of taxes. His testimony that he did not thumb through his returns is incredible, particularly because he also testified that he knew which expenses to report to Mr. Stromwell in 1972 since he had been able to deduct them for 25 or 30 years. Moreover, an earlier return of petitioner's had been prepared using income averaging and, at trial, Mr. Stromwell suggested that his first discussion of the method with petitioner had probably occurred around that time. Petitioner argues that he did not tell Mr. Stromwell to use the income averaging method and did not examine his return to see that it was used. He maintains that since he did not know that the method was actually used to *552 prepare his returns, he could not fraudulently intend to understate his taxable income, even if he knew that the method would be used to compute his tax liability. However, petitioner knew that Mr. Stromwell had records of his fraudulently underreported taxable income figures for 1968 to 1971. He was aware that his 1972 taxable income significantly exceeded those reported income figures. Moreover, he was very concerned about the taxes he owed in 1972. He also knew that Mr. Stromwell routinely used the income averaging method, among others, to compute his taxes. His testimony that he neither understood the meaning of "averaging," nor knew that Mr. Stromwell would use that method is contradictory, unsupported, and at times incredible. Petitioner did not have to be familiar with his 1972 return before fraud can be found. It is enough that petitioner's return was prepared using income averaging, when petitioner knew, with substantial certainty, that Mr. Stromwell would use income averaging to compute his taxes and that such computations would prove advantageous because fraudulent figures had been used in prior years. Thus, we are compelled to conclude that petitioner's *553 underpayment of taxes in 1972 was due to fraud. Petitioner contends that he relied in good faith on Mr. Stromwell to correctly prepare his 1972 income tax return, and that this reliance precludes a finding of fraud in his case. However, for good faith reliance to constitute a defense, the taxpayer must furnish to his accountant full information and data from which a correct return can be prepared. See Davis v. Commissioner,184 F.2d 86, 87 (10th Cir. 1950). While petitioner reported to Mr. Stromwell his proper items of income and expense for 1972, he did not, in 1972, supply Mr. Stromwell with his corrected taxable figures for the years 1968 through 1971. Thus, Mr. Stromwell had in his files those fraudulent taxable income figures which petitioner had reported to him in earlier years. Because petitioner knew Mr. Stromwell would use the income averaging method in computing his taxable income, and because he did not give Mr. Stromwell his correct taxable income figures for 1968 through 1971, petitioner did not furnish Mr. Stromwell with full information from which an accurate 1972 return could be prepared. Thus, we are unable to find that petitioner relied in *554 good faith on his accountant to properly prepare his 1972 income tax return. From the foregoing, we conclude that the underpayment of taxes in 1972 was due to the fraudulent use by Homer Adcock of the income averaging method. Accordingly, we find that Homer Adcock is liable for the addition to tax pursuant to section 6653(b), [5] and the statute of limitations does not bar respondent's assessment of the underlying deficiency against petitioners. Section 6501(c)(1). [6]
Decision will be entered for the respondent.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall, who subsequently resigned from the Court. After the parties were given an opportunity to request a new trial, which neither party did, the case was reassigned to Judge Perry Shields for disposition, by order of the Chief Judge dated February 8, 1982. ↩
1. All section references are to the Internal Revenue Code of 1954, as amended, during the year in issue, unless otherwise provided.↩
2. Any future references to "petitioner" in this case will mean Homer Adcock, unless otherwise provided.↩
3. In April he paid $ 500, in June he paid $ 500, in September he paid $ 8,000, and in December he paid $ 45,000.↩
4. Petitioner's testimony, as a whole, proved completely unreliable. He contradicted himself on many issues, including the meaning of "averaging," his payment of the estimated tax in 1972, his knowledge of tax law, and his acquaintance with Mr. Stromwell.↩
5. Respondent has not attempted to meet his burden of showing that Dorothy Adcock is liable for fraud under section 6653(b). See Stone v. Commissioner,56 T.C. 213, 227↩ (1971). 6. No question has been raised as to whether Dorothy Adcock qualifies as an innocent spouse. Nevertheless, a finding of fraud on the part of Homer Adcock is sufficient to remove the bar of the statute of limitations from the deficiency as determined against both petitioners. Vannaman v. Commissioner,54 T.C. 1011, 1018↩ (1970).