T.C. Memo. 1999-415


UNITED STATES TAX COURT


J. RANDALL GROVES AND JANE B. GROVES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1958-98.                    Filed December 23, 1999.


<u>Richard Lane Brown III</u>, for petitioners.

<u>Jennifer H. Decker</u> and <u>Andrew M. Winkler</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income tax, additions to tax, and a penalty as follows:

|       |            | Additions to tax and penalty | | |
|-------|------------|-----------------|------------|------------|
| <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6653(b)(1)</u> | <u>Sec. 6659</u> | <u>Sec. 6663</u> |
| 1988  | $50,538    | $37,904         | $15,161    |            |
| 1989  | 19,758     |                 |            | $14,819    |

After concessions, the issues for decision are:

1.  Whether petitioner[1] is liable for the addition to tax for fraud under section 6653(b) for 1988 or the fraud penalty under section 6663 for 1989.  We hold that he is not.

2.  Whether the statute of limitations bars assessment of tax for 1988 and 1989.  We hold that it does.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioners

Petitioners lived in Matthews, North Carolina, when they filed their petition.

1.  Petitioner's Law Practice

Petitioner is a tax attorney who began practicing law in 1967.  Petitioner was a trial attorney in the office of the Chief Counsel for the Internal Revenue Service (IRS) from 1967 to 1971. He began to practice law in Charlotte, North Carolina, in 1971. Petitioner tried 13 regular cases and numerous small cases in the Tax Court from 1968 to 1976.

2.  Petitioner's Activities in 1988 and 1989

Petitioner was a partner in the law firm Weinstein & Sturgess in 1988 and 1989.  In those years, petitioner

---

[1] References to petitioner are to J. Randall Groves. Section references are to the Internal Revenue Code in effect during the years at issue.  Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure.

represented clients before the IRS, established trusts and provided estate planning services for clients, was a member of the North Carolina Bar Association Section of Taxation (which he had previously chaired), chaired the Southeastern Region Special Liaison Tax Committee (not further identified in the record), and managed his law firm. Also in those years, petitioner was an elder of the Calvary Church and a member of its finance and building committees. He also negotiated a $17 million construction loan for the Calvary Church, formed the St. Catherine partnership with two of his law partners to manage the construction and leasing of a building for Weinstein and Sturgess, cared for his mother during a long illness, invested in a Texas corporation that was the plaintiff in a class action lawsuit for which petitioner hired the attorney and in which he participated extensively, and was a member of the board of directors of One Price Clothing Stores, Inc., discussed at paragraph B-2, below.

B.  Petitioner's Investment in Women's Clothing Stores

1.  Formation of J.K. Apparel

In 1984, Edward and Arlene Karp (the Karps), Henry Jacobs (Jacobs), Raymond Waters (Waters), John Waters, and petitioner decided to open a women's clothing store which would sell everything at one price. In June 1984, they incorporated J.K. Apparel, Inc. (J.K. Apparel), in North Carolina. J.K. Apparel

issued 30,000 shares of common stock with a par value of $1 per share. On June 29, 1984, petitioner bought 3,000 shares of J.K. Apparel stock for $3,000. The owners of J.K. Apparel's shares were as follows:

| Shareholder | Number of shares purchased | Percentage of shares purchased | Cost basis |
|---|---|---|---|
| Arlene Karp | 12,000 | 40% | $12,000 |
| Henry Jacobs | 12,000 | 40 | 12,000 |
| Petitioner | 3,000 | 10 | 3,000 |
| Raymond Waters | 1,500 | 5 | 1,500 |
| John Waters | 1,500 | 5 | 1,500 |
| Total | 30,000 | 100 | 30,000 |

On August 23, 1984, J.K. Apparel opened its first one price women's clothing store in South Carolina.

2. One Price Clothing Stores, Inc.

In 1985, petitioner and the other shareholders of J.K. Apparel decided to change the name of the corporation and to reincorporate in South Carolina. On August 28, 1985, One Price Clothing Stores, Inc. (the original One Price), was incorporated in South Carolina.

On August 30, 1985, J.K. Apparel merged into the original One Price. The original One Price was the surviving corporation. As part of the merger, the shareholders of J.K. Apparel received 10 shares of original One Price common stock for each of their shares of J.K. Apparel. Thus, petitioner received 30,000 shares of original One Price common stock in exchange for his 3,000 shares of J.K. Apparel stock.

The original One Price also issued 10,000 shares of common stock and 62,000 shares of Class A nonvoting common stock with a par value of $.10 per share.  On August 30, 1985, petitioner bought 1,000 shares of the original One Price common stock for $100.  The owners of the newly issued shares of original One Price stock were as follows:

| Shareholder | Number of shares purchased | Class | Cost basis |
|---|---|---|---|
| Arlene Karp | 4,000 | common | $400 |
| Henry Jacobs | 4,000 | common | 400 |
| Petitioner | 1,000 | common | 100 |
| Raymond Waters | 500 | common | 50 |
| John Waters | 500 | common | 50 |
| Total | 10,000 | common | 1,000 |
| | | | |
| Henry Jacobs | 54,560 | Class A, nonvoting | $5,456 |
| Raymond Waters | 7,440 | Class A, nonvoting | 744 |

At the end of 1985, petitioner owned 31,000 shares of the original One Price stock.

3.   The Karp Option

Mrs. Karp owned 124,000 shares of original One Price stock. On December 17, 1986, she sold petitioner, Waters, John Waters, and Jacobs (the four founders) an option to buy her stock for $4,860,000.  Each of the four founders paid $1,250 for the option ($5,000 total) and agreed that they would each receive 31,000 (one-fourth) of Mrs. Karp's shares.

On January 30, 1987, the four founders exercised the option and each bought 31,000 shares from Mrs. Karp for $1,215,000.  To pay for the shares, each of the four founders immediately resold

18,274 of their 31,000 shares (a total of 73,096 shares). Each of the four founders received $1,215,000 for the 18,274 shares of stock they sold.

### 4.   Petitioner's Gifts of Stock

On February 6, 1987, petitioner gave 1,000 shares of original One Price stock to Mrs. Groves. In March 1987, he gave 3,000 shares to his children.

### 5.   OPCS, Inc.

In March 1987, the founders of original One Price decided to make a public offering of its stock and to reincorporate the original One Price in Delaware. On April 6, 1987, they filed articles of incorporation in Delaware for OPCS, Inc. The original One Price owned all of the outstanding shares of OPCS, Inc., stock.

On April 8, 1987, the original One Price merged into OPCS, Inc. OPCS, Inc., was the surviving corporation and changed its name to One Price Clothing Stores, Inc. (OPCS). As a result of the merger, the original One Price shareholders received 10.120811 shares of OPCS stock for each of their shares in the original One Price.

Petitioners received a total of 412,179 shares of OPCS stock; petitioner received 402,059 shares, and Mrs. Groves received 10,120 OPCS shares. Petitioner received six stock

certificates for his 402,059 shares, and Mrs. Groves received four certificates for her 10,120 shares.

In May 1987, OPCS made an initial public offering of 500,000 shares of stock. Its shareholders, including petitioner, also offered 500,000 shares of their OPCS stock for sale. On May 19, 1987, petitioner sold 99,838 shares of OPCS stock for $1,392,740.

On June 3, 1987, petitioner gave to Calvary Church 22,730 shares of OPCS stock.

Adrian Delk (Delk) prepared petitioners' tax returns for tax years 1982 to 1991. Delk was the managing partner of his accounting office. Petitioner met with Delk in June 1987 to discuss petitioner's potential tax liability after the public offering. Delk knew that petitioner had acquired stock at different times and that petitioner had different bases in the stock.

On September 30, 1987, OPCS stock split 3 for 2. As an OPCS director, petitioner approved the April 1987 merger and signed a corporate resolution authorizing the September 1987 stock split.

6. Petitioners' Sales of Stock and SEC Rule 144

In 1988 and 1989, petitioners told their broker to sell blocks of 5,000, 30,000, 10,000, 4,000, 2,000, 20,000, and 20,000 OPCS shares. Securities and Exchange Commission (SEC) rule 144(d), 17 C.F.R. sec. 230.144 (1984), prohibited petitioner from selling the OPCS stock that he bought from Mrs. Karp for 2 years.

He was required to report on SEC Form 144 the number of shares he proposed to sell and his acquisition date.  For each proposed sale of OPCS stock in 1988 and 1989 by petitioners, petitioners submitted to their stock broker and to the SEC a Form 144 executed by petitioner or Mrs. Groves, a seller's representation letter signed by petitioner or Mrs. Groves, and letters from the attorney for OPCS stating the opinion that petitioners had complied with SEC rule 144.  Petitioners reported their proposed sales of OPCS stock during 1988 and 1989 on Forms 144 as follows:

### Sales Reported on Forms 144

| Stock owner | Acquisition date | # of shares to be sold | Proposed sale date | Acquired from/by | Nature of acquisition |
|---|---|---|---|---|---|
| Jane B. Groves | 2/6/87 | 5,000 | 2/25/88 | J.R. Groves | Gift of June 1984 stock |
| Jane B. Groves | 2/6/87 | 2,000 | 5/2/88 | J.R. Groves | Gift of June 1984 stock |
| J. Randall Groves | 6/2/84 | 30,000 | 5/3/88 | The company | Private placement |
| J. Randall Groves | 6/2/84 | [1]4,000 | 5/3/88 | The company | Private placement |
| J. Randall Groves | 6/2/84 | 20,000 | 3/13/89 | Purchase | Founder stock |
| J. Randall Groves | 1/30/87 | 20,000 | 5/26/89 | Purchase from selling shareholder | A. Kemp[2] [sic] |

[1] This was an amended form.  The original Form 144 contained the following information:

| | | | | | |
|---|---|---|---|---|---|
| J. Randall Groves | 6/2/84 | 10,000 | 5/3/88 | The company | Private placement |

[2] This should read:  A. Karp.

Petitioner could not sell the stock he had acquired from Mrs. Karp in 1988 because it was still subject to a 2-year holding period under SEC rule 144.  Thus, he reported to the SEC

in 1988 that he intended to sell only shares he had acquired from OPCS (or its predecessor).

### 7. Petitioner's Gift of Stock in 1989

On May 5, 1989, petitioner gave 20,000 shares of One Price stock to Campus Crusade for Christ. He told Campus Crusade for Christ that petitioners' tax considerations would determine when he made further contributions to that organization.

### C. Preparation of Petitioners' Income Tax Returns for 1988 and 1989

Petitioner prepared tax organizers for 1988 and 1989 and gave them to Delk. Petitioner used Forms 1099 and W-2 to complete the tax organizers for 1988 and 1989. Petitioner did not have a schedule or records showing his basis in, or number of shares of, OPCS stock when he listed the bases of the stock petitioners sold in 1988 and 1989 on the tax organizers. There is no indication that petitioner knew the basis in his OPCS stock in 1988 or 1989. Petitioner listed the following information about the stock he sold in 1988 and 1989 in the tax organizer for 1988 and 1989:

|  | | 1988 | | |
| # of shares | Date acquired | Date sold | Gross sales price | Cost or other basis |
|---|---|---|---|---|
| 35,280 | 1/30/87 | 5/3/88 | $467,500 | $158,760 |
| 3,000 | 2/1/87 | 3/15/88 | 52,500 | 13,000 |
| 2,000 | 2/2/87 | 5/15/88 | 26,500 | 9,000 |

| # of shares | Date acquired | 1989<br>Date sold | Sales price | Cost or basis |
|---|---|---|---|---|
| 20,000 | 1/30/87 | 3/13/89 | $240,000 | $74,000 |
| 20,000 | 1/30/87 | 5/26/89 | 322,500 | 74,000 |

Petitioner correctly listed the number of shares sold, the date on which they were sold, and the sales price on the 1988 organizer.  However, he incorrectly listed acquisition dates.  He also incorrectly listed the basis of the stock he sold in 1988 and 1989.

Petitioner did not give Delk documents to support the information he listed on the tax organizers.  Delk used the information from petitioner's tax organizers to prepare petitioners' 1988 and 1989 tax returns.

D.  Petitioners' Tax Returns for 1988 and 1989

Petitioners reported on their 1988 and 1989 returns that they sold OPCS stock as follows:

| # of shares sold | Reported Basis | 1988<br>Sale price | Gain reported | Actual basis[1] |
|---|---|---|---|---|
| 35,280 | $158,760 | $467,500 | $308,740 | $235 |
| 3,000 | 13,000 | 52,500 | 39,500 | 20 |
| 2,000 | 9,000 | 26,500 | 17,500 | 13 |

| # of shares sold | Reported Basis | 1989<br>Sale price | Gain reported | Actual basis[1] |
|---|---|---|---|---|
| 20,000 | $74,000 | $240,000 | $166,000 | $133 |
| 20,000 | 74,000 | 322,500 | 248,500 | 51,800 |

[1] This column was not on petitioners' 1988 return.

Petitioner received the 1988 return from Delk on April 14, 1989, and signed it without reviewing it in detail.

E.  Audit of Petitioners' Returns

Revenue Agent Kathy Sexton (Sexton) began examining petitioners' 1987, 1988, and 1989 returns in July 1990. Sexton asked petitioner to substantiate the capital gains petitioners reported on their 1988 and 1989 returns and to provide a schedule showing the number of shares of original One Price stock petitioners owned on January 1, 1987; the date of purchase, number, and purchase price of shares they bought in 1987, 1988, and 1989; all stock splits in 1987, 1988, and 1989; and petitioners' computation of per share costs. Petitioner sent Sexton a letter and memorandum and gave her boxes of documents about OPCS in response to her document request. The record does not show specifically what records petitioner gave to Sexton.

Petitioner told Sexton that he reported the basis of the OPCS stock based on how much petitioner had paid for it. He gave her some, but not all, of the basis information she requested. She could not compute petitioner's basis because, for example, he did not mention the September 30, 1987, stock split. Sexton and Delk met several times in 1990 and 1991. Delk showed Sexton petitioner's tax organizers.

F.  Petitioner's Criminal Case

On August 27, 1992, petitioner pleaded guilty to two counts of violating section 7203 (willful failure to file a return, supply information, or pay tax) (a misdemeanor). Petitioner

admitted in the plea agreement that he had willfully failed to supply information on his tax returns for 1988 and 1989 about $180,485 and $96,066, respectively, of gains from sales of OPCS stock.

On March 28, 1996, the U.S. District Court for the Western District of North Carolina, Judge Graham C. Mullen (Judge Mullen) presiding, accepted petitioner's guilty plea. On April 22, 1996, judgment was entered against petitioner pursuant to his guilty plea.

## G. State Bar Grievance Committee Proceedings

In 1996, the Grievance Committee of the North Carolina State Bar Association decided there was not probable cause to initiate disciplinary action against petitioner as a result of petitioner's conviction.

## H. Notice of Deficiency

On November 21, 1997, respondent issued a notice of deficiency to petitioners for 1988 and 1989. In it, respondent determined that petitioners had capital gains of $626,619 in 1988 and $514,850 in 1989, which was $180,492 more than petitioners had reported for 1988 and $96,067 more than they had reported for 1989. Respondent also determined that petitioners were liable for additions to tax and a penalty for overvaluation of their OPCS stock under section 6659 for 1988 and for fraud for 1988 and 1989.

OPINION

A.  Addition to Tax for Fraud Under Section 6653(b) and
    Penalty Under Section 6663(a)

1.  Background

Respondent contends that petitioner is liable for the addition to tax for fraud under section 6653(b) for 1988 and the fraud penalty under section 6663(a) for 1989, and concedes that Mrs. Groves is not liable for fraud.  Respondent has the burden of proving fraud by clear and convincing evidence.  See sec. 7454(a); Rule 142(b).  Respondent must establish:  (a) Petitioner underpaid tax for each year in issue, and (b) some part of the underpayment is due to fraud.  See sec. 6653(b); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).

2.  Underpayment

Petitioners concede that they underpaid tax related to their sales of OPCS stock for 1988 and 1989.

3.  Fraudulent Intent

For purposes of section 6653(b), fraud is the intentional commission of an act to evade a tax believed to be owing.  See Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939).  Fraud is never presumed; it must be established by affirmative evidence.  See Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  The Commissioner

may prove fraud by circumstantial evidence because direct evidence of the taxpayer's intent is rarely available.  See Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984).

Petitioner recognizes that he is collaterally estopped from contesting each element of section 7203.  Thus, he does not dispute that he is collaterally estopped from denying that he knew he had the duty to maintain records or supply information and that he willfully failed to do so for 1988 and 1989.  See Kotmair v. Commissioner, 86 T.C. 1253, 1264 (1986).  Petitioner's conviction under section 7203 does not estop him from arguing that he lacked fraudulent intent for 1988 and 1989, but it is evidence that he committed fraud.  See Wilkinson v. Commissioner, T.C. Memo. 1997-410.

4.  Badges of Fraud

Courts have developed several objective indicators, or "badges", of fraud.  See Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  Respondent argues that the following badges of fraud are present in this case:  (1) Large understatements of income; (2) inadequate books and records; (3) failure to give accurate information to tax return preparer; (4) failure to cooperate with tax authorities; (5) implausible and inconsistent explanations of behavior; and (6) training, business experience, and knowledge of the income tax laws.

We disagree that respondent has clearly and convincingly proven that petitioner committed fraud. We think a more likely explanation is that petitioner's understatements of income were due to negligence.

Petitioner had large understatements of income in 1988 and 1989 resulting from his sale of OPCS stock. While that is a factor to be considered, a substantial understatement of income standing alone does not prove fraud. See <u>Vannaman v. Commissioner</u>, 54 T.C. 1011, 1018 (1970).

Petitioner did not keep records showing the number of his shares of, or his basis in, OPCS stock in 1988 and 1989. However, we do not believe that he did so with the intent to underpay tax. Instead, we think he was careless. Carelessness in the preparation and maintenance of books and records is not fraud. See <u>Mitchell v. Commissioner</u>, <u>supra</u>.

Respondent argues that petitioner intentionally misled Delk. We disagree. Petitioner admits that he hurriedly and negligently prepared the 1988 tax organizer. However, he testified that he told Delk about the errors on the organizers and that Delk had the correct information available to him. Petitioner credibly testified that he did not expect that the information on the 1988 and 1989 organizers would appear on petitioners' returns as given to Delk. Although petitioner did not give correct information to Delk about the bases in the OPCS stock, we are not convinced that

he did so with the intent to mislead Delk. Respondent has not shown that petitioner knew the bases of the shares he sold in 1988 and 1989 or that he intentionally gave Delk incorrect information.

Respondent disputes petitioner's claim that he told Delk about the errors on petitioner's 1988 and 1989 organizers. Despite respondent's suspicions, respondent offered no credible evidence to the contrary. Neither party called Delk to testify due to his poor health.

Respondent argues that petitioner did not cooperate with respondent's agents because he did not give Sexton all of the documents she requested. Petitioner provided a substantial amount of documents to Sexton in response to her requests, and petitioner or Delk attended meetings with Sexton. Respondent did not show what documents petitioner gave Sexton, and so we cannot evaluate respondent's contention that petitioner was so uncooperative as to constitute a badge of fraud.

Respondent contends: (a) Petitioner's testimony that he thought he had a basis of about $4 per share in the OPCS stock he sold in 1988 was not credible, (b) petitioner did not explain why petitioners reported sales of high basis stock on their 1988 return when SEC rule 144 barred him from selling stock he had acquired within 2 years, and (c) petitioner knew that his 1988 organizer was in error. Respondent relies on these points in

arguing that petitioner knew and intentionally misstated the bases of the stock he sold in 1988 and 1989. We are not convinced that he did. Respondent has not offered any evidence that petitioner intended to underpay tax that is as convincing as the many indications that his conduct is more fairly viewed as negligent.

Respondent points out that petitioner was an experienced tax attorney. While that is a factor to be considered, it does not establish that he had fraudulent intent. We do not find fraud under "circumstances which at most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). There is neither direct evidence nor enough circumstantial evidence to show clearly and convincingly that the understatements on the returns were due to fraud.

### 5. Conclusion

We hold that petitioner is not liable for the addition to tax for fraud for 1988 and the fraud penalty for 1989.

### B. Statute of Limitations

Respondent mailed the notice of deficiency to petitioners more than 6 years after they filed their returns for 1988 and 1989. Thus, the statute of limitations bars assessment and collection of the deficiencies determined for 1988 and 1989, unless petitioners' returns for those years were false or

fraudulent with the intent to evade tax.  See sec. 6501(c)(1).
As discussed above, respondent failed to prove by clear and
convincing evidence that petitioner committed fraud.  We hold
that respondent is barred by the statute of limitations from
assessing and collecting tax and the addition to tax for
valuation overstatement for the years in issue.

    To reflect the foregoing,

<u>Decision will be entered</u>
<u>for petitioners</u>.